UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**M.C.W.;**

      Plaintiff,

v.

**Blue Cross and Blue Shield of Texas, Inc., a division of Health Care Service Corporation;**

      Defendant.
_____/

CASE NO.:

**JURY**

**ERISA CLASS ACTION COMPLAINT**

Plaintiff M.C.W. asserts, to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the following:

### INTRODUCTION AND NATURE OF THIS ACTION

1. Plaintiff M.C.W. challenges Defendant Blue Cross and Blue Shield of Texas's denial of coverage for services rendered to plaintiff's son, A.W., at a licensed residential treatment center. Blue Cross's denial, based on a claim of lack of medical necessity, is faulty for two distinct reasons. *First*, it relies on medical necessity criteria for residential behavioral health treatment unmentioned in Blue Cross's certificate of coverage that are inconsistent with the terms of the Plan. *Second*, Blue Cross's criteria for residential behavioral health treatment is more restrictive than and out of parity with Blue Cross's medical necessity standards for services rendered at skilled nursing facilities, which violates the federal Mental Health Parity and Addiction Equity Act. Blue

Cross's use of behavioral health guidelines that are undisclosed to plan participants and more restrictive than the plan allows, and its violation of the Parity Act, breach its fiduciary obligations to its insureds.

2. Each violation results in improperly denied benefits. And because (1) Blue Cross's certificate of coverage is a boilerplate document identical in all material respects among all Blue Cross subscribers and (2) Blue Cross's coverage practices for residential behavioral health treatment are out of parity for all subscribers, it has improperly denied mental health benefits to other subscribers, warranting class action treatment.

3. With this action, Plaintiff seeks to recover the benefits improperly denied individually and on behalf of all others similarly situated, plus interest and attorneys' fees.

## JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331, as it arises under federal law.

5. Venue is appropriate in this judicial district because defendant Blue Cross Blue Shield of Texas's headquarters are here and the breaches described here occurred within this judicial district.

6. In conformity with 29 U.S.C. § 1132(h), Plaintiff will serve the original Complaint by certified mail on the Secretary of Labor and the Secretary of the Treasury.

## PARTIES

7. Plaintiff M.C.W., at all material times, resided in Dallas, Texas. M.C.W. is a retired employee of Texas Instruments Incorporated. Both she and A.W. are covered

under the Texas Instruments Retiree Health Benefits Plan. A copy of the Plan's summary plan description is attached to this Complaint at **Exhibit A**. Because it is employer-sponsored, the plan is regulated by ERISA.

8. A.W. executed a power of attorney confirming M.C.W.'s authority to pursue the claims in this action on his behalf.

9. Because of the intensely private nature of the medical services rendered that will be discussed here, this Complaint is using initials instead of the names of Plaintiff and her son.

10. Defendant Blue Cross and Blue Shield of Texas, a division of Health Care Service Corporation, is part of a family of companies operating Blue Cross Blue Shield plans in Illinois, Montana, New Mexico, Oklahoma and Texas. The Texas entity's headquarters is at 1001 East Lookout Drive, Richardson, Texas, in Collin County. Defendant adjudicates all mental healthcare and substance abuse claims for plaintiff's ERISA-regulated health insurance plan. In this Complaint, "Blue Cross" refers to the named defendant and all parent, subsidiary, successor, predecessor and related entities to which these allegations pertain.

11. Blue Cross may be served with process by serving its registered agent of process Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

12. In light of its central role in the mental health and substance abuse-related claim adjudication process, Blue Cross is an ERISA fiduciary as defined by 29 U.S.C. § 1104(a). As such, it is legally required to discharge its duties "solely in the interest of the

participants and beneficiaries" and for the "exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *Id.* It must do so with reasonable "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers, so long as such terms are consistent with ERISA. *Id.* As a fiduciary, Blue Cross owes a duty of loyalty to plan participants and beneficiaries.

**FACTS**

**Insurance coverage promises**

13. Plaintiff's plan covers services that are 1) medically necessary 2) provided by an eligible provider and 3) covered under the plan. (Exhibit A, p. 36). Medically necessary expenses are "those services, supplies and procedures which are necessary for the diagnosis, care or treatment of an illness and which are determined to be widely accepted professionally in the U.S. as effective, appropriate, and essential, based on recognized standards of the health care specialty involved." (*Id.*)

14. Under the general heading "Behavioral Health Care," the plan covers a wide variety of illness and diagnoses, including psychological problems, prescription drug abuse, alcohol abuse and addiction, mental illness, family relationship/concerns, parenting issues/concerns, stress, depression or anxiety, illegal drug abuse or addiction, elder care issues/concerns and eating disorders. (*Id.*, p. 48.)

15. Separately, Blue Cross covers services rendered at skilled nursing facilities. (*Id.*, p. 60).

16. The plan purports to "provide for mental health parity in accordance with the law." (*Id.*, p. 49).

**A.W.'s background**

17. A.W. has suffered from mental health issues for much of his adolescence. He is diagnosed with major depressive disorder, generalized anxiety disorder, ADHD and cannabis use disorder.

18. On February 27, 2020, at the recommendation of A.W.'s behavioral health providers, he was admitted for treatment at BlueFire Wilderness, an Idaho-licensed wilderness therapy program located in south-central Idaho. BlueFire provides, among other things, cognitive behavioral therapy, experiential therapy and dialectical behavior therapy. Therapy is provided in individual, group and family settings.

19. A.W. was treated at BlueFire from February 27, 2020 to May 21, 2020.

20. After completing his treatment at BlueFire, A.W. was admitted at Telos Residential Treatment Center, LLC, a Utah-licensed residential behavioral health treatment center located in Orem, Utah. At the time of his admission, A.W. was diagnosed with Cannabis Use Disorder (F12.10); Neurodevelopmental Disorder (F88); Attention-Deficit/hyperactivity disorder (F90.0); Generalized Anxiety Disorder (F41.1); and Major Depressive Disorder (F33.1). At Telos, A.W. received individual, group and family therapy.

21. A.W. was 17 years old on May 22, 2020, the date of his admission at Telos.

22. On June 11, 2020, Blue Cross denied coverage for A.W.'s treatment at Telos beginning on June 11, 2020 because it had determined that he did not meet Milliman Care

5

Guidelines for behavioral health treatment. On appeal, Blue Cross upheld the decision, again based solely on the Milliman Care Guidelines.

23. On February 4, 2021, Blue Cross denied coverage for A.W.'s treatment at Telos from June 18, 2020 to January 14, 2021 because it had again determined that he did not meet the applicable Milliman Care Guidelines for behavioral health treatment.

24. A.W. was discharged April 14, 2021.

25. On May 21, 2021, Blue Cross issued its final coverage denial for services rendered between June 18, 2020 to January 14, 2021 at Telos. The total claim for this period was $195,700. Blue Cross's explanation for its denial was as follows: "Based on the information provided, you did not meet MCG care guidelines Partial Hospital Behavioral Health Level of Care (Child/Adolescent) Guidelines 23rd Edition for the following reasons: Your mood and anxiety symptoms have improved. You were medically stable. You had social support. You were able to care for yourself well enough. You could have continued to get better and work on communication skills and coping skills in a lower level of care. You had access to a lower level of care. From the information provided, you could have been treated in a less intensive setting such as Mental Health Intensive Outpatient."

26. The May 21, 2021 denial concluded Blue Cross's mandatory internal appeal process.

### CLASS CLAIMS

27. Plaintiff brings these claims individually and on behalf of two classes. The first class is known as the **Unmentioned Criteria Class** and is as follows:

> *All persons who are covered under any ERISA-governed health benefit plan insured and/or administered by Blue Cross that (1) provides coverage for mental or nervous disorders or substance abuse care, (2) who received treatment at a residential behavioral health treatment center during the applicable class period, and (3) whose claims were denied by Blue Cross based on medical necessity guidelines unmentioned in the corresponding certificate of coverage.*

28. The Parity Act Class is as follows:

> *All persons who are covered under any ERISA-governed health benefit plan insured and/or administered by Blue Cross that (1) provides coverage for mental or nervous disorders or substance abuse care, (2) who required treatment at a residential behavioral health treatment center during the applicable class period, and (3) whose claims were denied by Blue Cross based on medical necessity guidelines more restrictive than any medical necessity standards used to adjudicate medical necessity for services rendered at skilled nursing facilities.*

29. The class period applicable to both classes extends back two years from the date of the commencement of this action.

30. Membership in the proposed classes is so numerous that individual joinder of all class members is impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court.

31. Plaintiff's claims are typical of all other class members in both classes. Plaintiff, like all other class members from both classes, received treatment at a residential behavioral health treatment center. Plaintiff, like all other class members, did not receive coverage of that treatment due to defendant's standard practice of denying claims for behavioral health care programs based on a medical necessity protocol that is (1) not referenced in and inconsistent with the class members' certificate of coverage and (2) more restrictive than medical necessity protocols applied to skilled nursing facilities.

32. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of both classes and plaintiff is a member of both classes that she seeks to represent.

33. Plaintiff will adequately represent both classes because she has interests in common with the proposed class members and plaintiff has retained attorneys who are experienced in class action litigation.

34. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

- whether Blue Cross may rely on an unmentioned coverage protocol not incorporated in a beneficiary's plan to deny coverage when the plan terms, without reference to the unmentioned protocol, facially cover the claims at issue;

- whether, by applying unmentioned coverage protocols, Blue Cross made a medical necessity determination that is inconsistent with the terms and coverage promises of the Plan;

- whether Blue Cross's coverage protocols to determine medical necessity for residential behavioral health care are more restrictive than standards used to determine medical necessity for skilled nursing facilities;

- whether Blue Cross's reliance on coverage protocols that are more restrictive for residential behavioral health care than protocols for skilled nursing facilities violates the Mental Health Parity and Addiction Equity Act.

35. The prosecution of separate actions by individual members of the class would create a risk of:

- inconsistent or varying adjudications concerning individual members of the class that would establish incompatible standards of conduct for defendant; and

- adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not party to such adjudications, and/or substantially impair or impede the ability of other non-party class members to protect such individual interests.

36. The class action method is appropriate for the fair and efficient prosecution of this action.

37. Individual litigation of all claims that might be asserted by all members of the class would produce a multiplicity of cases that would burden the federal judicial system. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the conduct of this defendant.

38. The certification of the above classes would allow litigation of claims that, in view of the expense of the litigation, may be an insufficient amount to support separate actions.

## COUNT I
## CLAIM FOR BENEFITS
### BROUGHT ON BEHALF OF THE UNMENTIONED CRITERIA CLASS

39. Plaintiff realleges and incorporates paragraphs 1-37 as if fully set forth.

40. Plaintiff's first legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The claim is brought individually and on behalf of the **Unmentioned Criteria Class**.

41. Plaintiff has a standing to assert claims "to recover benefits due … under the plan" and to "clarify [their] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

42. Blue Cross abused its discretion by denying coverage to Plaintiff by relying on criteria unmentioned in the certificate of coverage and inconsistent with the terms of the plan.

### COUNT 2
### CLAIM FOR BENEFITS
### BROUGHT ON BEHALF OF THE PARITY ACT CLASS

43. Plaintiff realleges and incorporates paragraphs 1-376 as if fully set forth.

44. Plaintiff's second legal claim is brought under 29 U.S.C. § 1132(a)(1)(B). The claim is brought individually and on behalf of the **Parity Act Class**.

45. Plaintiff has standing to assert claims "to recover benefits due … under the plan" and to "clarify [her] rights to future benefits under the terms of the plan," as authorized by 29 U.S.C. § 1132(a)(1)(B).

46. The federal Parity Act specifically applies to Blue Cross's certificate of coverage covering Plaintiff and all class members. 29 U.S.C. § 1185a.

47. Under the Parity Act, health insurers must "treat sicknesses of the mind in the same way that they would a broken bone." *New York State Psychiatric Ass'n, Inc. v. United Health Grp.*, 980 F. Supp.2d 527, 542 (S.D.N.Y.), *aff'd in part, vacated in part*, 798 F.3d 125 (2d Cir. 2015).

48. A "treatment limitation" is a limit on "the scope or duration of treatment." 29 U.S.C. § 1185(a)(3)(B)(iii).

49. Regulations promulgated under this statute focus the Court's analysis in two respects. First, both "quantitative" and "nonquantitative" treatment limitations may run afoul of the Parity Act. 45 C.F.R § 146.136(a). Whereas a quantitative limitation is

reducible to a number, a nonquantitative treatment limitation is any other limitation on the scope or duration of treatment. *Id.* § 146.136(c)(4)(i).

50. Second, any limitation applied to mental health treatment must be scrutinized by comparing it to the limitations placed on an analogous medical or surgical treatment in the same classification. *Id.* § 146.136(c)(2)(i)-(ii).

51. The limitation at issue is the manner in which Defendant interprets and calibrates its "medically necessary" standard applicable to behavioral health services. Defendant relies on extra-contractual protocols and guidelines in assessing the medical necessity of behavioral health services. These guidelines, as applied, narrow the certificate's definition of medical necessity.

52. In contrast, Blue Cross does not apply similarly restrictive protocols and guidelines in determining medical necessity for comparable medical services rendered at skilled nursing facilities. This disparate treatment in comparable services violates the federal Parity Act as incorporated into Blue Cross's certificates of coverage.

53. Blue Cross abused its discretion by denying coverage to Plaintiff and the class in a context in which Blue Cross's plan facially covers Plaintiff's claims.

54. Cross's plan facially covers Plaintiff's claims.

### COUNT 3
### CLAIM FOR BREACH OF FIDUCIARY DUTY
### BROUGHT ON BEHALF OF EACH CLASS

55. Plaintiff realleges and incorporates paragraphs 1-37 as if fully set forth.

56. Plaintiff's third claim is for breach of fiduciary duty for failing to operate the plan for the exclusive purpose of providing benefits to plan beneficiaries and for

failing to follow plan documents. It is brought on behalf of the Plaintiff and on behalf of both the **Unmentioned Criteria Class** and the **Parity Act Class** under 29 U.S.C. § 1132(a)(3).

57. Plaintiff has standing to assert claims "to enjoin any act or practice which violates [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3).

58. By applying unmentioned medical necessity criteria for behavioral health care that are inconsistent with the terms of Plan, Blue Cross failed to follow plan documents. 29 U.S.C. § 1104(a)(1)(D).

59. By denying benefits and imposing highly restrictive, extra-contractual criteria, Blue Cross failed to operate the plan for the exclusive purposes required by ERISA, which include "providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i).

60. Blue Cross has failed to follow Parity Act requirements by imposing a nonquantitative treatment limitation on residential behavioral health care that it does not impose on medical care in skilled nursing facilities. 29 U.S.C. § 1185a. This violation breaches Blue Cross's obligation to operate the plan in compliance with ERISA and with the terms of the Plan, which promises coverage that complies with the Parity Act.

61. Plaintiff and the members of the **Unmentioned Criteria Class** and the **Parity Act Class** had benefits wrongfully denied as a result of Blue Cross's breaches of its fiduciary duties and are therefore entitled to equitable, injunctive, and declaratory relief to remedy these breaches. These remedies include, but are not limited to, an injunction requiring Blue Cross to reprocess claims denied based on unmentioned medical necessity

protocols for residential behavioral health care that are out-of-parity with comparable standards used for skilled nursing facility care.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts so triable.

DATED: April 29, 2022

                        Respectfully submitted,

                    By: */s/ Meagan Martin Powers*
                        Meagan Martin Powers
                        Texas Bar No. 24050997
                        **MARTIN POWERS & COUNSEL, PLLC**
                        600 E. John Carpenter Fwy., Suite 234
                        Irving, TX 75062
                        Telephone: (214) 612-6471
                        Fax: (214)247-1155
                        meagan@martinpowers.com

                        Jordan Lewis (*pro hac vice* motion forthcoming)
                        Florida Bar No. 97997
                        **JORDAN LEWIS, P.A.**
                        4473 N.E. 11th Avenue
                        Fort Lauderdale, FL 33334
                        Telephone: (954) 616-8995
                        Fax: (954) 206-0374
                        jordan@jml-lawfirm.com

                        David W. Asp (*pro hac vice* motion forthcoming)
                        Minnesota Bar No. 0344850
                        Jennifer L. M. Jacobs (*pro hac vice* motion forthcoming)
                        Minnesota Bar No. 0328753
                        Derek C. Waller (*pro hac vice* motion forthcoming)
                        Minnesota Bar No. 0401120
                        **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
                        100 Washington Ave. South, Suite 2200
                        Minneapolis, MN 55401
                        Telephone: (612) 339-6900
                        Fax: (612) 339-0981
                        dwasp@locklaw.com
                        jlmjacobs@locklaw.com
                        dcwaller@locklaw.com

                        ***Attorneys for Plaintiff***